Amy Briggs (State Bar No. 194028)
abriggs@fbm.com
Jeremy A. Lawrence (State Bar No. 270866)
jlawrence@fbm.com
Morgan G. Churma (State Bar No. 343563)
mchurma@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiffs
KAISER FOUNDATION HEALTH PLAN, INC.
and KAISER FOUNDATION HEALTH PLAN
OF COLORADO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC. and KAISER FOUNDATION HEALTH PLAN OF COLORADO,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., FEDERAL INSURANCE COMPANY, BERKLEY NATIONAL INSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY, NATIONAL FIRE & MARINE INSURANCE COMPANY, RSUI INDEMNITY COMPANY, MARKEL AMERICAN INSURANCE COMPANY, FAIR AMERICAN SELECT INSURANCE COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>   **1. BREACH OF CONTRACT;**<br>   **2. DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

1
COMPLAINT

45011\20891676.1

Plaintiffs Kaiser Foundation Health Plan, Inc. ("KFHP") and Kaiser Foundation Health Plan of Colorado ("KFHP-CO" and, collectively, "Kaiser") allege as follows:

## INTRODUCTION

1.  This insurance coverage lawsuit arises out of the defendant insurance companies' (the "Insurers") breaches of their duties to their insured, Kaiser, in connection with a now-settled consolidated action that had been brought in this Court entitled *United States of America ex rel. Ronda Osinek v. Kaiser Permanente, et al.*, Case No. No. 13-cv-03891-EMC (the "Underlying Action").[1] The Underlying Action encompassed a complaint-in-intervention by the United States and six *qui tam* lawsuits brought by individual relators, as further described below. The Underlying Action alleged that Kaiser violated the False Claims Act and the United States and relators sought, *inter alia*, treble damages.

2.  Kaiser has now settled the Underlying Action for hundreds of millions of dollars (the "Settlement").

3.  AIG issued a primary Directors and Officers liability policy to Kaiser that provides $10 million in coverage for the Underlying Action upon Kaiser's satisfaction of a $10 million self-insured retention. Under its policy, AIG expressly agreed to provide coverage for settlements, judgments, damages, and multiplied damages incurred by Kaiser.

4.  Chubb, Berkley, Starr, National Fire, RSUI, Markel, Fair American, and Allianz (the "Excess Insurers") issued follow-form excess policies that collectively provide an additional $85 million in coverage for the Underlying Action.

5.  Kaiser timely notified the Insurers of the Underlying Action and submitted a claim for coverage to AIG in excess of the self-insured retention and AIG's $10 million limit.

6.  AIG admitted that the Underlying Action constitutes a covered claim under its

---

[1] The term "Insurers" collectively refers to the named Defendants in this lawsuit, specifically: National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG"); Federal Insurance Company ("Chubb"); Berkley National Insurance Company ("Berkley"); Starr Indemnity & Liability Company ("Starr"); National Fire & Marine Insurance Company ("National Fire"); RSUI Indemnity Company ("RSUI"); Markel American Insurance Company ("Markel"); Fair American Select Insurance Company ("Fair American"); Allianz Global Risks US Insurance Company ("Allianz").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

2
COMPLAINT

45011\20891676.1

primary policy and that Kaiser's payment of defense fees and costs already satisfied the self-insured retention. But AIG refused to pay anything more than $1 million as reimbursement for Kaiser's defense fees and costs and denied coverage for all other amounts pursuant to a sublimit in the policy.

7. The Excess Insurers adopted AIG's coverage position and denied any obligation to reimburse Kaiser for defense fees and costs in excess of the $1 million paid by AIG.

8. In addition to Kaiser's defense fees and costs, the Insurers owe a duty to indemnify Kaiser for the Settlement. The Insurers, however, have breached their obligation to pay their limits as part of their duty to indemnify Kaiser for the Settlement.

9. The Insurers have thus forced Kaiser to initiate this lawsuit to receive the benefits owed to Kaiser under the Insurers' policies. Specifically, Kaiser seeks indemnity for the Settlement and a declaration that the Insurers must indemnify Kaiser for the Settlement up to the Insurers' policy limits.

## THE PARTIES

10. KFHP is a non-profit corporation organized under the laws of the state of California and headquartered in Oakland, California.

11. KFHP-CO is a non-profit corporation organized under the laws of Colorado and headquartered in Denver, Colorado. KFHP-CO is a wholly owned subsidiary of KFHP.

12. AIG is an insurance company, which Kaiser alleges upon information and belief is organized under the laws of the state of Pennsylvania and headquartered in New York, New York.

13. Chubb is an insurance company, which Kaiser alleges upon information and belief is organized under the laws of the state of New Jersey with its principal place of business in Indianapolis, Indiana.

14. Berkley is an insurance company, which Kaiser alleges upon information and belief is organized under the laws of the state of Iowa and headquartered in Urbandale, Iowa.

15. Starr is an insurance company, which Kaiser alleges upon information and belief is organized under the laws of the state of Texas and headquartered in New York, New York.

16. National Fire is an insurance company, which Kaiser alleges upon information and

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

3
COMPLAINT

45011\20891676.1

1  belief is incorporated under the laws of the state of Nebraska and headquartered in Omaha,
2  Nebraska.

3      17.    RSUI is an insurance company, which Kaiser alleges upon information and belief is
4  incorporated under the laws of the state of New Hampshire and headquartered in Atlanta, Georgia.

5      18.    Markel is an insurance company, which Kaiser alleges upon information and belief
6  is incorporated under the laws of the state of Virginia and headquartered in Glen Allen, Virginia.

7      19.    Fair American is an insurance company, which Kaiser alleges upon information
8  and belief is incorporated under the laws of the state of Delaware and headquartered in New York,
9  New York.

10      20.    Allianz is an insurance company, which Kaiser alleges upon information and belief
11  is incorporated under the laws of the state of Illinois and headquartered in Chicago, Illinois.

12      21.    Defendants DOES 1 through 100, inclusive, are sued herein under such fictitious
13  names, as Plaintiff is informed and believe, and thereon allege, that Does 1 through 100, inclusive,
14  are legally responsible for, and proximately caused, the injuries and damages to Plaintiff alleged
15  herein, and/or each otherwise have an interest in the matters adjudicated herein.  Plaintiff is
16  ignorant of the true names or capacities of the defendants sued herein under the fictitious names
17  Does 1 through 100, inclusive.  When their true names and capacities are ascertained, Plaintiff will
18  amend this Complaint by inserting their true names and capacities.

19  <center>**JURISDICTION AND VENUE**</center>

20      22.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1), in that
21  the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is
22  between citizens of different states.

23      23.    AIG is subject to personal jurisdiction in this Court because, upon information and
24  belief, it maintains places of business in the State of California, regularly transacts business in
25  California, and/or has entered into contracts with KFHP to be performed in California and
26  delivered to KFHP at its Oakland, California address. Fed. R. Civ. Pro. 4(k); Cal. Code Civ. Pro
27  § 395.

28      24.    Chubb is subject to personal jurisdiction in this Court because, upon information

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

4
COMPLAINT
45011\20891676.1

and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

25. Berkley is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

26. Starr is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

27. National Fire is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

28. RSUI is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

29. Markel is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

30. Fair American is subject to personal jurisdiction in this Court because, upon information and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

31. Allianz is subject to personal jurisdiction in this Court because, upon information

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

5
COMPLAINT

45011\20891676.1

and belief, it maintains places of business in the State of California, regularly transacts business in California, and/or have entered into contracts with KFHP to be performed in California and delivered to KFHP at its Oakland, California address.

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the insurance dispute occurred within this District.

## **DIVISIONAL ASSIGNMENT**

33. Assignment to the San Francisco Division is appropriate because a substantial part of the of the events and omissions giving rise to this lawsuit occurred in the counties of San Francisco and Alameda, where the Underlying Action is pending and KFHP is headquartered, respectively.

## **THE UNDERLYING ACTION**

34. KFHP and KFHP-CO contract with the Centers for Medicare & Medicaid Services, or "CMS," to be Medicare Advantage Organizations ("MAOs") and offer Medicare Advantage ("MA") plans to Medicare beneficiaries.

35. Under the MA system, CMS' payments to MAOs, including Kaiser, consist of two components: (1) a predetermined base rate per enrollee per month and (2) a "risk-adjusted" rate that takes into account a beneficiary's demographics and health status. MAOs use "diagnosis codes" to capture and report diagnoses. To determine a beneficiary's health status, CMS uses that beneficiary's diagnoses. Diagnosis codes that result in additional payments above the base rate are called "risk-adjusting" diagnosis codes.

36. Beginning in 2013, a number of *qui tam* complaints were filed under seal alleging that Kaiser violated the federal False Claims Act (the "FCA") in connection with risk-adjusting diagnosis codes (the "Qui Tam Actions"). Kaiser was not made aware of or served with the Qui Tam Actions at that time.

37. The Qui Tam Actions consisted of the following lawsuits:

    a) *United States ex rel. Osinek v. Kaiser Permanente,* No. 3:13-cv-03891-EMC (N.D. Cal.) (the "Osinek Action");

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

6
COMPLAINT

45011\20891676.1

    b)   *United States ex rel. Arefi v. Kaiser Foundation Health Plan, Inc.,* No. 3:16-cv-01558-EMC (C.D. Cal.) (the "Arefi Action");

    c)   *United States ex rel. Stein v. Kaiser Foundation Health Plan, Inc.,* No. 3:16-cv-05337-EMC (C.D. Cal.) (the "Stein Action");

    d)   *United States ex rel. Bryant v. Kaiser Permanente,* No. 3:18-cv-1347-EMC (N.D. Cal.) (the "Bryant Action");

    e)   *United States ex rel. Bicocca v. Permanente Medical Group, Inc.,* No. 3:21-cv-03124-EMC (E.D. Cal.) (the "Bicocca Action"); and

    f)   *United States ex rel. Taylor v. Kaiser Permanente,* No. 3:21-cv-03894-EMC (Dist. Col.) (the "Taylor Action").

38. The Qui Tam Actions were consolidated on June 25, 2021.

39. The U.S. Department of Justice ("DOJ") intervened in the Qui Tam Actions as to certain claims on July 27, 2021. The DOJ alleged that Kaiser and other entities submitted, or caused to be submitted, false claims for risk-adjusted payments based on diagnoses improperly added via addenda from the years 2009 until present. The DOJ filed its Complaint-in-Intervention on October 25, 2021.

40. The *Arefi*, *Stein*, and *Bicocca* Actions were dismissed in full.

41. The *Bryant* and *Taylor* Actions survived to the extent they alleged FCA claims in which the DOJ declined to intervene.

42. The DOJ's amended complaint ultimately stated five causes of action: (1) presentment of false claims, (2) the use of false records or statements, (3) conspiracy to violate the FCA (collectively, the "FCA Claims"), (4) payment by mistake, and (5) unjust enrichment.

43. The Underlying Action sought damages, including treble damages, jointly and severally against KFHP and KFHP-CO and other entities. In relation to the FCA Claims, the DOJ alleged that the government "incurred damages" and was entitled to "treble damages under the FCA, plus a civil penalty for each violation of the Act" based on the submission of allegedly improper risk-adjusting diagnosis codes.

44. The DOJ's request for relief in connection with the FCA Claims sought the following from Kaiser: (i) the amount of the United States' damages, trebled as required by law; (ii) the maximum civil penalties allowed by law, (iii) the costs of this action, plus interest as

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

7
COMPLAINT

45011\20891676.1

provided by law, and (iv) any other relief that the Court deemed appropriate.

45. Kaiser settled the Underlying Action for hundreds of millions of dollars pursuant to an agreement that was executed in January 2026 with no admission of liability.

46. Kaiser vigorously defended itself in the Underlying Action and has incurred defense fees and costs in excess of AIG's limit.

## THE INSURANCE POLICIES

47. For many years, KFHP purchased Non-Profit Directors and Officers ("D&O") Liability insurance to protect itself and KFHP-CO from lawsuits alleging wrongful acts of the company, such as the Underlying Action.

48. From at least 2013 through 2022, KFHP purchased a primary D&O policy from AIG as part of a larger tower of D&O insurance, which, in 2021, included excess D&O policies issued by the Excess Insurers. The ten policies relevant to this lawsuit, together, provide Kaiser with $95 million in D&O Liability coverage.

49. KFHP purchased an AIG policy in effect from April 30, 2021, to April 30, 2022 (the "AIG Policy").  The AIG Policy's D&O Coverage Section has a per claim limit of $10 million excess of a $10 million self-insured retention. (The self-insured retention ("SIR") requires that Kaiser pay the first $10 million in Loss. The SIR has been satisfied by Kaiser with respect to the Underlying Action, which AIG has admitted.)

50. The D&O Coverage Section requires AIG to "pay the **Loss** of [Kaiser] that arises from any **Claim** made against [Kaiser] for a **Wrongful Act** of [Kaiser]."[2]

51. The D&O Coverage Section applies "with respect to **Claims** first made against an **Insured** during the **Policy Period** . . . and reported to [AIG] as required by this **Coverage Section**."

52. The term **Loss** in the D&O Coverage Section is defined broadly to include "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment) and **Defense Costs**" and "shall also specifically include . . . multiplied damages" if insurable under

---

[2] All bolded terms are bolded in the referenced policy and indicate a defined term.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

8
COMPLAINT

45011\20891676.1

applicable law.

53. The term **Claim** is defined in the D&O Coverage Section to include, *inter alia*, "a civil . . . proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading."

54. The term **Wrongful Act** includes "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by" an insured organization (here, KFHP and KFHP-CO).

55. KFHP also purchased follow-form excess liability policies from Chubb, Berkley, Starr, National Fire, RSUI, Markel, Fair American, and Allianz in effect from April 30, 2021 to April 30, 2022 (the "Excess Policies" or, individually, "Excess Policy"), as described further below.

56. Chubb sold KFHP two of the Excess Policies. The first Chubb policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of the AIG Policy. The second Chubb policy affords $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $90 million in underlying limits.

57. Berkley's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $60 million in underlying limits.

58. Starr's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $80 million in underlying limits.

59. National Fire's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $100 million in underlying limits.

60. RSUI's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $110 million in underlying limits.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

9
COMPLAINT
45011\20891676.1

61. Markel's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $120 million in underlying limits.

62. Fair American's Excess Policy affords an additional $10 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $150 million in underlying limits.

63. Allianz' Excess Policy affords an additional $5 million in D&O coverage for Kaiser's defense and any ultimate indemnity obligation, in excess of $180 million in underlying limits.

64. Each Excess Policy "follows form" to the AIG Policy, meaning that they incorporate the terms and conditions of the AIG Policy, unless specified otherwise.

65. Together, the AIG Policy and the Excess Policies are referred to as the "Policies."

## THE CLAIM AND THE INSURERS' DENIALS

66. The Underlying Action is a **Claim** against Kaiser, first made during the 2021 policy period.

67. The Underlying Action alleges breaches of duty, neglect, errors, misstatements, misleading statements, omissions and/or acts by Kaiser, including FCA violations, which are **Wrongful Acts** under the Policies.

68. Kaiser provided timely notice of the Underlying Action to the Insurers pursuant to the Policies' notice provisions, during the 2021 policy period, in satisfaction of the Policies' reporting requirements.

69. Kaiser has satisfied the $10 million SIR.

70. Kaiser incurred **Loss** in excess of the Insurers' policy limits.

71. The Underlying Action sought **Loss** under the Policies, in the form of damages, multiplied damages, and costs.

72. At a minimum, the portion of the Settlement attributable to the United States' multiplied damages claim constitutes covered **Loss** under the Policies. This amount alone exceeds the Insurers' policy limits.

73. Accordingly, Kaiser has satisfied its burden to establish coverage under the Policies.

74. More than a year after receiving notice of the Underlying Action, on February 14, 2023, AIG issued a coverage position letter in which it agreed the Underlying Action was covered under the AIG Policy, but only for **Defense Costs** it contends are subject to a $1 million sublimit. AIG denied coverage for all **Loss**, including for any settlements, judgments, damages, multiplied damages, and **Defense Costs**, Kaiser has incurred, or will incur, in excess of the $1 million sublimit. Kaiser requested that AIG reconsider its coverage position. AIG has refused to do so.

75. AIG's coverage position relies on the "Governmental Funding Defense Cost Coverage" provision in Endorsement 37 to the AIG Policy. That provision limits coverage for **Defense Costs** incurred "in connection with a **Claim** for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds" to $1 million.

76. AIG also denied that it has any obligation to reimburse any other **Loss** that Kaiser incurred in connection with the Underlying Action, and it has relied on a clause within the "Governmental Funding Defense Cost Coverage" provision of Endorsement 37 to support its denial.  That clause modifies the definition of **Loss** to exclude the "return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds. . . ."  (the "Governmental Funding Exclusion").

77. The Governmental Funding Exclusion applies only to that part of **Loss** that constitutes "the return of funds," if any, but does not preclude coverage for that portion of **Loss** consisting of multiplied damages paid as part of the Settlement. Obviously, multiplied damages cannot constitute "the return of funds" because they are not money that Kaiser received from the government in the first instance.

78. Neither AIG, nor any of the other Insurers, have provided any basis to support their refusal to indemnify Kaiser for its payment of multiplied damages as part of the Settlement.

79. The Excess Insurers have adopted AIG's coverage position and also denied any obligation to indemnify Kaiser for **Loss** in the Underlying Action, asserting that the Government

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

11
COMPLAINT

45011\20891676.1

Funding Exclusion precludes coverage for any settlement, judgment, damages, or multiplied damages incurred by Kaiser. The Excess Insurers' denials suffer from the same problems identified in the paragraphs above.

80. Ultimately, the Insurers' only basis for denying coverage (other than the $1 million paid by AIG) is their position that the Governmental Funding Exclusion bars coverage for all other **Loss.** The Insurers ignore both the plain language of their policies and also that the DOJ also seeks multiplied damages, which cannot possibly be deemed the return of funds or any interest, fines, or penalties arising out of the return of such funds.

81. The Governmental Funding Exclusion does not preclude coverage for the multiplied damages sought in the Underlying Action. Rather, the Governmental Funding Exclusion only excludes the "return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds . . . ." Because the DOJ's multiplied damages claim seeks to recover amounts in addition to any funds Kaiser received from CMS and does not include interest, fines, or penalties, the Governmental Funding Exclusion does not apply to a settlement or judgment for multiplied damages.

82. Additionally, amounts paid to resolve the non-intervened claims in the *Bryant* and *Taylor* Actions constitute multiplied damages and payments to the relators and thus cannot be deemed the return of funds.

83. Upon information and belief, Kaiser alleges that Berkley, Starr, Markel, Fair American and Allianz do not intend to enforce the mediation requirements in their policies or, alternately, have waived their right to do so by denying coverage.

84. Kaiser has complied with all other policy provisions and has fully performed, or is excused from performing, all of the applicable terms and conditions of the Policies.

85. As a result of the Insurers' wrongful denials of coverage, Kaiser has suffered damages in excess of the Insurers' policy limits and must be compensated as further described below.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

12
COMPLAINT

45011\20891676.1

# FIRST CAUSE OF ACTION

## AGAINST INSURERS AND DOES 1-75

### (BREACH OF CONTRACT)

86. Kaiser repeats and realleges the foregoing paragraphs as if fully set forth herein.

87. The Insurers' respective Policies constitute valid and enforceable written contracts between the Insurers and Kaiser.

88. The Insurers have a duty to indemnify Kaiser up to their policy limits for the Settlement insofar as it is attributable to multiplied damages, compensation to relators, attorneys' fees, or other amounts not excluded by the Governmental Funding Exclusion.

89. Kaiser incurred **Loss** in excess of the Policies' limits.

90. AIG agrees that the $10 million self-insured retention under the AIG Policy has been satisfied.

91. The Insurers have denied any obligation to indemnify Kaiser for the Settlement based on AIG's application of the Governmental Funding Exclusion, which does not apply.

92. No exclusions apply to preclude coverage for additional amounts owed up to the Insurers' full policy limits for the Settlement.

93. The Insurers have breached their current duty to indemnify Kaiser for the Settlement.

94. As a direct and proximate result of their breaches, Kaiser has incurred damages in excess of the Insurers' limits in an amount to be proven at trial.

# SECOND CAUSE OF ACTION

## AGAINST THE INSURERS AND DOES 50-100

### (DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201)

95. Kaiser repeats and realleges the foregoing paragraphs as if fully set forth herein.

96. By reason of the foregoing, an actual and justiciable controversy presently exists between Kaiser, on the one hand, and the Insurers, on the other hand, with respect to the Insurers' obligations under their Policies. Those controversies include, but are not limited to:

   a)   Whether the Insurers owe a duty under their Policies to indemnify Kaiser

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

13
COMPLAINT

45011\20891676.1

for the Settlement; and

b) Whether the Governmental Funding Exclusion limits the Insurers' obligation to indemnify the Settlement.

97. As such, Kaiser seeks a judicial declaration as to the Parties' rights and obligations with respect to each of the foregoing controversies.

## PRAYER FOR RELIEF

WHEREFORE, Kaiser requests the following relief:

a. For damages in an amount to be proven at trial;

b. For all other benefits owed to Kaiser under the Policies according to proof;

c. For a judicial declaration as to the Parties' rights and obligations with respect to each of the controversies alleged;

d. For pre- and post-judgment interest;

e. For costs of suit; and

f. For such additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Kaiser demands a trial by jury as to all claims and issues as provided in Federal Rule of Civil Procedure 38(b).

Dated: February 20, 2026                    FARELLA BRAUN + MARTEL LLP

By: /s/ Amy B. Briggs
    Amy Briggs

Attorneys for Plaintiffs
KAISER FOUNDATION HEALTH PLAN, INC. and
KAISER FOUNDATION HEALTH PLAN OF COLORADO

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

14
COMPLAINT

45011\20891676.1