United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC., et al., Plaintiffs, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., Defendants. | Case No. 26-cv-01490-EMC **ORDER GRANTING KAISER'S MOTION FOR PARTIAL SUMMARY JUDGMENT** Docket Nos. 76, 97, 99 |

This is an insurance coverage dispute. Plaintiffs, Kaiser Foundation Health Plan and Kaiser Foundation Health Plan of Colorado, (collectively "Kaiser") were sued by the United States and *qui tam* relators in *United States of America ex rel. Ronda Osinek v. Kaiser Permanente, et al.*, Case No. 13-cv-03891-EMC (the FCA Litigation) for violating the False Claims Act. After settling the case, Kaiser sought coverage from its primary insurer National Union Fire Insurance (AIG) and its excess insurers for the settlement. The insurers denied coverage.

Kaiser now moves for partial summary judgment on select issues of contract interpretation. The insurers oppose, both on substantive grounds and on Rule 56(d) grounds for lack of sufficient facts to oppose. Although Kaiser only moves against its primary insurer AIG, the excess insurers have separately filed a Rule 56(d) motion.

Having reviewed the briefing, including supplemental briefing, and heard oral argument, the Court **GRANTS** Kaiser's motion for partial summary judgment and **DENIES** the insurers' 56(d) motions.

United States District Court
Northern District of California

## I. BACKGROUND

The Underlying Litigation and Its Settlement

The underlying lawsuits arose out of Kaiser's alleged abuse of the Medicare Advantage program. This program allows beneficiaries to receive their healthcare from private insurers, including Kaiser. In 2013 and 2014, *qui tam* relators sued Kaiser, alleging that Kaiser had systematically altered patent medical records to add retrospective, incorrect diagnoses in order to inflate the payments it received. These complaints were initially filed under seal. After the proceedings were related, the Department of Justice intervened. The DOJ's complaint sought to recover from its False Claims Act claim "damages, trebled as required by law," "civil penalties," "the costs of this action, plus interest as provided by law" and any other appropriate relief. Dkt. No. 78, Ex. 12, 13. The complaint also sought "an amount equal to the money paid by the United States through the Medicare Advantage program as a result of Defendants' false submissions, plus interest" and "an amount equal to how much Defendants were unjust enriched, plus interest." *Id.*

Kaiser settled the litigation with the DOJ and its relators in the *Osinek* and *Taylor* actions. The Settlement resolves all claims brought by the DOJ. Kaiser agreed to pay $556 million plus interest and relators' attorneys' fees in the main Settlement agreement, and $25 million plus interest in a related agreement, for a total of $581 million, plus interest and fees. Dkt. No. 78, Ex. 17, 18 & 19. The Settlement agreement includes (1) $278 million labeled as "restitution"; (2) an additional $278 million (unlabeled); (3) 4.25% in interest; (4) $764,469 for Osinek's attorney fees; and (5) attorney fees for relator Taylor's counsel. *Id.* at Ex. 17. The Settlement states that the relators claim entitlement to a share of the proceeds of the Settlement. *Id.*

The Insurance Policy

Kaiser purchased an AIG policy in effect from April 30, 2021 to April 30, 2022 for Non-Profit Director and Officers Liability coverage. AIG's Policy C provides that "This policy shall pay the **Loss** of any **Organization** that arises from any **Claim** made against such **Organization** for any **Wrongful Act** of such **Organization.**" Dkt. No. 77-1 (AIG Policy) at 20.

However, "All coverage granted for **Loss** under this **Coverage Section** is provided solely

with respect to Claims first made against an Insured during the Policy Period or any applicable Discovery Period and reported to the Insurer as required by this Coverage Section, except to the extent coverage is extended pursuant to the Claims Savings Clause of this Coverage Section to a Claim first made prior to the Policy Period."

Section 14 of the Policy provides Definitions for the terms Claim, Loss, and Wrongful Act.

**Claim** is defined as, (1) "a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration, or any other alternative dispute resolution process," (2) "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of criminal proceedings); or (iii) receipt or filing of a notice of such charges" or (3) [omitted because irrelevant]. *Id.* at 34.

**Loss** is defined as "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment) and **Defense Costs**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes or tax penalties; (3) any amounts for which an Insured is not financially liable or which are without legal recourse to an Insured; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. *Id.* at 36.

**Loss** "shall also specifically include (subject to this policy's other terms, conditions, and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Ac, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages." *Id.* at 37.

**Wrongful Act** means "(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act . . . ." (2) "with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization" . . . *Id.* at 39.

Endorsement #37 of the Policy amends the definition of "Loss" contained in Section 14 of the policy as follows:

> "GOVERNMENTAL FUNDING DEFENSE COST COVERAGE
>
> Notwithstanding the foregoing, **Loss** shall not include the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds; provided, however, that this policy shall pay **Defense Costs** in connection with any **Claim** made against an **Insured** for the return of such funds, subject to the **Government Funding Defense Costs Sublimit of Liability** and any co-insurance or separate retention provided for such coverage in this policy."
> *Id.* at 126.

Coverage Denial and Instant Lawsuit

In 2023, AIG denied coverage to Kaiser for any settlement or judgment arising from the FCA Litigation, relying primarily on the Return of Funds exclusion. *See* Dkt. No. 77, Wright Decl, Ex. 2 (denying coverage because "the Complaint is brought by the United States government, seeking the return of funds, interest, fines, or penalties arising out of the return of such funds."). In 2024, AIG reiterated its denial of coverage.

Kaiser filed this instant lawsuit on February 20, 2026. Dkt. No. 1. The insurers answered on April 17, 2026. Dkt. Nos. 17, 19, 24-26, 33, 34. An initial case management conference was set for May 11, 2026. Dkt. No. 64. Kaiser filed this motion for partial summary judgment on May 22, 2026. Dkt. No. 79.

The parties met and conferred pursuant to Rule 26 on June 8, 2026, opening discovery. Hartley Rule 56(d) Decl., ¶ 4. AIG filed its first document requests on June 10. *Id.* ¶ 5 & Ex. A.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a

scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Section 56(d) provides that "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order."

The interpretation of an insurance policy is "a question of law" for the court to be decided according to "well-settled rules of contract interpretation." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (Cal. 2004). Only "if there is a dispute over a material fact necessary to interpret the contract" is the question left to the jury. *Essex Walnut Owner, L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1149 (N.D. Cal. 2018).

## III. DISCUSSION

This early summary judgment motion is narrow in scope. Kaiser seeks partial summary judgment that the Return of Funds Exclusion would not apply to any multiplied damages paid as part of the Settlement. Kaiser does *not* seek partial summary judgment on whether any portion of its Settlement payment actually constitutes a covered **Loss**, including whether any portion of the Settlement in fact reflects payment for multiplied damages. Dkt. No. 113 (Reply) at 15. Kaiser also seeks partial summary judgment that its Settlement Agreement satisfies the initial definition of a "**Loss** of [Kaiser] that arises from any **Claim** made against [Kaiser] for any **Wrongful Act** of [Kaiser]" under AIG's Policy.

### A. Whether the Court should deny the motion for summary judgment as premature under Rule 56(d)

Before addressing the merits of Kaiser's motion, the Court considers the insurers'

argument that they lack facts required to oppose the motion.

A party "should be afforded reasonable access to potentially favorable information prior to the granting of summary judgment, because on summary judgment all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir. 1982). Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). "Where . . . a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any [Rule 56(d)] motion fairly freely." *Id*

To obtain Rule 56(d) relief, the non-movant must submit a declaration identifying: (1) the specific facts it hopes to elicit from further discovery; (2) that the facts sought exist; and (3) that the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The declaration must also explain how the facts sought would preclude summary judgment. *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Before discovery has taken place, a non-movant "cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington*, 323 F.3d at 774.

1. AIG's Motion

AIG seeks discovery directed at two issues: (1) when Kaiser first became aware of the claims against it and (2) on the nature of Kaiser's settlement payment. Dkt. No. 92 at 30. AIG contends that as to Issue 1, discovery would show that the FCA Litigation was "first made" against Kaiser before the AIG policy period began (which would mean it is not covered). Dkt. No. 97 at 9. As to Issue 2, AIG contends that discovery will show that the Settlement is comprised of the return of funds or associated "interest, fines or penalties." *Id.* at 11.

Neither of the issues AIG seeks discovery are relevant to the issues presented in Kaiser's

United States District Court
Northern District of California

narrow summary judgment motion. As to Issue 1, Kaiser does not move on whether its claim is covered by the policy. Rather, it moves on whether its Settlement meets threshold requirements to be a loss and whether the Return of Funds exclusion bars coverage of a settlement of multiplied damages. Kaiser could obtain summary judgment on both these points and yet still ultimately fail on its claim due to the "first made" issue the Insurers raise—but that question is not yet before the Court.

AIG's second issue goes to the identity of the funds that comprise the Settlement. This is similarly a question that Kaiser would have to successfully answer to succeed on its coverage claim. But Kaiser only moves on the contractual question of whether the Return of Funds Exclusion encompasses any multiplied damages paid as part of the Settlement. Even if the Court grants summary judgment to Kaiser on this issue, to succeed on its claim Kaiser would still need to show that the Settlement in fact included "multiplied damages." The Insurers will have the chance to take discovery on this issue and contest this claim. But Kaiser does not move on this issue now, and no discovery is required to resolve the contractual interpretation question raised by its motion.

AIG's 56(d) motion is **denied**.

2. The Excess Insurers' Motion

The Excess Insurers separately move to deny the Kaiser's summary judgment motion on 56(d) grounds. On top of the issues raised in the AIG motion, they also raise the additional issues that (1) the Settlement concerns multiple entities beyond the Kaiser Plaintiffs and Kaiser has not addressed allocation; and (2) Loss does not include certain "uninsurable" acts on public policy grounds and discovery into Kaiser's underlying conduct is necessary to determine whether these public policy exceptions apply. As with the issues AIG raised in its 56(d) motion, Kaiser's motion does not require either issue to be resolved. Kaiser nowhere seeks summary judgment that every entity in the Settlement is a covered organization or that no allocation of the Settlement funds is required. And Kaiser only seeks summary judgment on whether the Return of Funds Exception applies to multiplied funds, not on the applicability of any other exceptions to Loss coverage.

Kaiser does move on whether the Settlement is "**Loss**," which could imply a finding that the public policy exception for uninsurable acts does not apply. However, given that Kaiser's motion does not address exceptions to the definition of Loss other than the Return of Funds exclusion, the Court does not construe Kaiser's motion to request such a determination.

The Excess Insurers' 56(d) motion is **denied**.

**B. Whether the FCA Settlement is a "Loss of any Organization that arises from any Claim made against such Organization for any Wrongful Act of such Organization."**

Kaiser's motion seeks summary judgment on threshold questions of coverage under AIG's Policy C: (1) Is the Settlement a **Loss**; (2) Is the Settlement the **Loss** of an insured **Organization**; (3) Does the Settlement "arise from" a **Claim**; and (4) Did the FCA Litigation allege **Wrongful Act**s of Kaiser. Dkt. No. 113 at 2.

AIG does not dispute most of these threshold points. In its opposition, AIG does not argue that Kaiser is not an insured "**Organization**", that the Settlement does not arise from a "**Claim**," or that the FCA Litigation does not allege "**Wrongful Acts**" of Kaiser. Rather, AIG's opposition on this issue focuses on whether the Settlement constitutes a **Loss**.[1]

AIG does not dispute, nor could it, that the Kaiser Settlement satisfies the initial definition of **Loss** as "damages, settlements, judgments." It is a settlement. However, the **Loss** definition includes many embedded exceptions. A **Loss** is not "civil or criminal fines or penalties." It is not "matters which may be deemed uninsurable under the law." And it is not the "return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds." AIG raises all these exceptions as reasons why

[1] AIG also devotes a significant portion of its opposition on this issue to arguing that Kaiser's Claim is only covered under the Policy if it was "first made" during the Policy Period and that Kaiser's claim was not. Dkt. No. 92 at 11-15, 16-18 (arguing that Kaiser became aware of the lawsuit in 2020, prior to the applicable Policy's April 2021-April 2022 claim period). However, because Kaiser's motion does not ask the Court to decide whether any portion of the Settlement is *covered*, this issue is not yet before the Court. *See* Reply at 3 ("Neither party asks the Court to decide when the Claim was 'first made,' so the Court need not, and should not, decide this issue."). The Court does not consider or decide the issue of whether Kaiser's claim was "first made" during the policy period.

Kaiser's claim may not ultimately be **Loss** under the Policy. But Kaiser does not purport in this motion to seek summary judgment that its claimed loss falls outside all of these exceptions. Its initial motion says nothing, for example, about whether the claimed loss is a "matter[] which may be deemed uninsurable under the law." Instead Kaiser seeks a judicial determination on a discrete issue: whether multiple damages fall within the Return of Funds exclusion.

Kaiser's motion for summary judgment is **GRANTED** as to the following:

- Kaiser is an insured **Organization** under the AIG Policy
- The Settlement arises from a **Claim**
- The FCA Litigation alleged **Wrongful Acts** of Kaiser
- Kaiser's Settlement satisfies the prima facie definition of a **Loss** as a settlement. The Court makes no ruling on whether any of the exclusions (other than the Return of Funds exclusion at issue below) in the **Loss** definition apply.

**C. Whether the Return of Funds Exclusion applies to any portions of the Kaiser settlement paid to resolve claims for multiplied damages?**

As an initial matter, at oral argument, AIG challenged whether the Court may properly resolve the question of whether the Return of Funds exclusion would be applicable to multiplied damages paid as part of the Settlement Agreement without first resolving whether such multiplied damages were in fact paid. AIG framed this as a hypothetical question, analogous to an advisory opinion. But as AIG conceded, there is a live case or controversy between the parties as to the applicability of the Return of Funds exclusion, such that this Court would have jurisdiction if Kaiser had sought a declaratory judgment on the applicability of the exclusion. The Court therefore has jurisdiction to resolve the question, which goes to the core of the parties' dispute. Moreover, where a claim can be resolved on multiple grounds, the court has discretion to determine the sequence of its resolution of those grounds in order to maximize *e.g.* judicial efficiency. Resolution of this contract interpretation question at this early stage will streamline the remaining litigation.

The Court thus turns to the merits of the issue in dispute. The Court first addresses the

rules of construction of insurance policies. In California, "the intention of the [contracting] parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 545 (Cal. 1992) *(*citing Civ. Code, § 1638). "If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (Cal. 2010) (quotations omitted).

"[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Id.* at 322. "The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." *Id.* "[T]he insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.*, 5 Cal.5th 216, 222 (Cal. 2018). "If these rules do not eliminate the uncertainty, a court must construe the applicable language against the drafter who created the uncertain language." *Golden Eagle Ins. Co. v. Ins. Co. of the W.*, 99 Cal. App. 4th 837, 845 (Cal. App. 2002)

As a further corollary to policy interpretation, it is a "fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201 (Cal. 1973). "[A]ny provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear." *Id.* (citing *Steven v. Fidelity & Casualty Co.* 58 Cal.2d 862, 878 (Cal. 1962); *see also Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (Cal. 2001) (courts "cannot read into the policy what [the insurer] has omitted"). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (Cal. 2003). Even if the "the insurer's suggestions are reasonable interpretations which would bar recovery by the

claimants," if there is "any other reasonable interpretation under which recovery would be permitted," the court must adopt the interpretation that provides coverage. *Jacober*, 10 Cal.3d at 203.

And consistent with a general rule of construction, when a policy uses separate words, courts take this to mean that those words have separate meanings. In *Foster-Gardner*, the California Supreme Court observed that the policy in question did not treat the terms "suit" and "claim as "interchangeable" but used them "separately." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins*. Co., 18 Cal. 4th 857, 880 (Cal. 1998). This "careful separation" indicated that there were "differing rights and obligations" with respect to these words. *Id.* Similarly, in *Palmer*, the California Supreme Court examined a clause that excluded coverage for trade marks, service marks, or trade names unless they were titles or slogans. Accordingly, the definition of "title" could not subsume the definitions of "trade mark," "service mark," or "trade name" because that would render "all or part of the exclusion clause [] meaningless." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1117 (Cal. 1999). The inverse is also true: "the same word used in an instrument is generally given the same meaning unless the policy indicates otherwise." *E.M.M.I.*, 32 Cal.4th at 475.

In California the intent of contracting parties is to be ascertained "from the writing alone, if possible." Cal. Civ. Code § 1639. In assessing the merits of the policy interpretation in question, the Court therefore begins with the most important source of authority, the Policy itself.

Kaiser's Policy defines **Loss** as:

> "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment) and Defense Costs; however, "Loss" (other than Defense Costs) shall not include: (1) civil or criminal fines or penalties; (2) taxes or tax penalties; (3) any amounts for which an Insured is not financially liable or which are without legal recourse to an Insured; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.
>
> Loss "shall also specifically include (subject to this policy's other terms, conditions, and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any Insured Person pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Ac, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) punitive, exemplary and ***multiplied damages***. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage

for such penalties and punitive, exemplary and multiple damages."

Dkt. No. 77-1 at 36, 37 (emphasis added).

The **Loss** definition explicitly includes multiplied damages. The question before the Court, then, is whether the Return of Funds exclusion removes multiplied damages from the **Loss** definition. The Return of Funds exclusion provides that notwithstanding the general policy definition of Loss, Loss does not "include the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds." In short, the key question here is whether multiplied damages paid in a settlement of an FCA claim are either (1) the "return of funds" or (2) "interest, fines or penalties arising out of the return of such funds" under the Return of Funds rider.

As to the first clause, the Court gives the "return of funds which were received from any federal, state or local government agency" its plain meaning: restitution to the Government for funds that were wrongly received. *See AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgmt. LLC*, 967 F.3d 1216, 1225 (11th Cir. 2020) ("Giving, as we must, unambiguous policy terms their ordinary dictionary meaning, we must consider return to mean to revert to a former owner or to give back to the owner."). There is no indication in the contractual language that this term means anything more than what it says. Multiplied damages are above and beyond and thus distinct from the sum fraudulently obtained and returned to the government. Moreover, the fact that the next clause in the rider specifies that "interest" arising out of the return of such funds is also excluded from the definition of **Loss** suggests that the "return of funds" itself is cabined to the literal return of funds, not some more expansive concept of making the Government whole (through *e.g.* adjustment for the time value of money). If "return of funds" had such an expansive meaning, the Policy would not have needed to separately state that interest, a quintessential form of *e.g.* "make whole" damages, is also excluded.

The closer question is whether "any interest, fines or penalties arising out of the return of such funds" encompasses multiplied damages paid in connection with an FCA claim. Under the plain language of the Policy, multiplied damages are plainly not "interest." Nor are they strictly penalties or fines. The Government in its complaint sought to recover "damages, trebled as

required by law," "civil penalties," "the costs of this action, plus interest as provided by law" and any other appropriate relief, treating multiplied damages as distinct from civil penalties. Dkt. No. 78, Ex. 12, 13. This follows the language of the FCA statute, which provides for "a civil penalty of not less than $5,000 and not more than $10,000, . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C.A. § 3729. The statute explicitly treats civil penalties as distinct and separate from multiplied damages.[2] Returning to the language of the Policy itself, all three terms in dispute – "fines," "penalties," and "multiplied damages" – appear in the Policy definition of **Loss** as separate and distinct terms. The Policy states that **Loss** "shall not include: (1) civil or criminal fines or penalties," but "shall also specifically include (subject to this policy's other terms, conditions, and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any Insured Person pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) punitive, exemplary and multiplied damages." Like the FAC statute, the definition of **Loss** treats fines, penalties, and multiplied damages as separate and distinct categories (that are also distinct from punitive damages). Each of these terms thus should be treated as having different meanings. *See Foster-Gardner, Inc*, 18 Cal. 4th at 880 ("careful separation" of terms suggests different associated obligations).

Moreover, even if there were some ambiguity about whether multiplied damages are a subset of "fee" or "penalty," California law is clear that "[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Minkler*, 49 Cal. 4th at

[2] The parties have extensively briefed background law on the extent to which multiplied damages under the FCA are considered punitive in nature. Although the Supreme Court has called treble FCA damages "essentially punitive," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000), the most recent authority holds that the FCA's "damages multiplier has compensatory traits along with the punitive" and that FCA "[t]reble damages certainly do[] not equate with classic punitive damages." *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119 (2003). In short, FCA treble damages have a mixed character of punitive and compensatory, the exact "tipping point" of which "defies general formulation." *Id.* at 130. This background law on the extent to which FCA multiple damages are punitive does not resolve the question of whether FAC multiplied damages are considered penalties or fines under the Policy at issue, which is an issue first and foremost of contract interpretation based on the language of the Policy.

322. The insurer "cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *Jacober*, 10 Cal.3d at 201. Rather, "any provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear." *Id.* The language here, especially given the use of "multiplied damages" as a term independent from "penalties" within the coverage segment of the **Loss** definition, is not a "conspicuous, plain and clear" removal of coverage for multiplied damages. *Id.*

AIG disputes that the "plain and clear" rule for exclusions can be invoked at this stage, maintaining that the Court must inquire into the insured's reasonable expectations, for which extrinsic evidence must be evaluated. This argument conflates the standards that govern coverage and exclusions. *See* Dkt. No. 21. In assessing an exclusion, courts first determine whether the insured has a reasonable expectation of *coverage* from the policy. If such a reasonable expectation exists, the court then considers whether an exclusion that would remove this coverage has been stated plainly and clearly. *See Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1213 (Cal. 2004) (after insured identified language that raised a reasonable expectation of coverage, any limitation on that coverage "consequently" was "required to be conspicuous, plain and clear"); *see also Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App.4th 561, 575 (2013) ("plain and clear" rule "applies only when the insured has a reasonable expectation of coverage"). Here, the definition of loss, which "specifically" provides coverage for "multiplied damages" raises a reasonable expectation of coverage. To defeat this expectation, the exclusion is "required to be conspicuous, plain and clear." *Haynes*, 32 Cal. 4th at 1213; *see also Westlands Water Dist. v. Zurich Am. Ins. Co.*, No. 1:03-CV-05747OWWLJO, 2006 WL 279310, at *7 (E.D. Cal. Feb. 6, 2006) ("[W]hen interpreting ambiguous exclusionary language the normal inquiry" that a court "seeks the interpretation that is most faithful to the insured's reasonable expectations" "is modified" such that "the proponent of a broad exclusion would only prevail if 'its interpretation is the *only reasonable one.*'") (emphasis in original). Here, the **Loss** definition places "multiplied damages" within the scope of loss; the Return of Funds exclusion does not clearly take them out. The Return of Funds exclusion thus does not bar recovery for multiplied damages claims.

AIG makes several additional arguments, none of which change the Court's conclusion.

AIG argues that the phrase "notwithstanding" at the beginning of the Return of Funds exclusion is decisive because "'notwithstanding' clauses work to sweep aside potentially conflicting" provisions. *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 559 (9th Cir. 2016). AIG contends that because the Return of Funds exclusion begins with the word "notwithstanding," the Court must ignore the definition of **Loss** provided earlier in the contract, with its distinctions between penalties and multiplied damages. But the term "notwithstanding" only sweeps aside conflicting provisions; it does not nullify the entirety of everything before it. Here, there is only a conflict if FCA multiplied damages are "penalties or fines" arising from the Return of Funds. AIG's argument thus begs the question answered above. The term "notwithstanding" does not upset the analysis.

AIG also points to two district courts that it describes as having interpreted Return of Funds language to bar coverage for FCA claims. *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, No. 1:18-CV-01991-SDG, 2021 WL 4429088, at *7 (N.D. Ga. Sept. 27, 2021) ("Likewise, the civil penalties and treble damages the government sought were fines and penalties "arising out of" the government's efforts to obtain the return of the wrongfully paid funds."); *NWHW Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. SACV 22-01030-CJC (KESX), 2023 WL 9375862, at *9 (C.D. Cal. Dec. 22, 2023), *aff'd sub nom. NWHW Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 24-388, 2025 WL 570889 (9th Cir. Feb. 21, 2025) (following Sava). These cases are not apposite, however. Both involved coverage disputes over *defense costs*, not settlement indemnification, that construed different language than at issue here. The district courts construed language limiting defense costs for claims "arising out of the return, or request to return," funds to the Government, not whether a portion of a Settlement agreement for multiplied damages constitutes a "return of funds" or "any interest, fines or penalties arising out of the return of such funds." Kaiser notes that in the only decision addressing coverage for a settlement agreement under a comparable return of funds, a California trial court declined to determine that the whole settlement agreement for FCA claims fell as a matter of law into the exception, noting that the allotment of the settlement was "disputed" and not ripe for summary judgment. *See* ECF 78-1, Ex. 22 at 7, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Prime*

*Healthcare Servs., Inc., et al.*, No. CIVSB2206182 (Cal. Super. Ct., San Bernardino Sept. 23, 2021); *see also Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1077 (7th Cir. 2023) (affirming summary judgment finding coverage for FCA settlement where policy's definition of "Loss" included "multiplied portion of any multiplied damages award"; even if the "restitution" portion of the settlement was not covered, "[t]he half that was not subject to that label far exceeded [the] policy limit").

Finally, AIG argues that reading the exclusion narrowly would "sacrifice" the deterrence goals of the FCA by allowing wrong-doers like Kaiser to commit such actions and receive coverage. It cites to cases condemning indemnification of disgorgement of wrongfully acquired money and punitive damages. *See Bank of the West*, 2 Cal. 4th at 1266 ("It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired."); *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 316 (1999) (California "public policy prohibits indemnification for punitive damages"). But it is undisputed that the Policy excludes coverage for any restitutionary/disgorgement aspects of the settlement, as such would constitute a "return of funds." And "although the FCA's treble damages remedy is still 'punitive' in that recovery will exceed full compensation in a good many cases . . . [t]reble damages certainly do not equate with classic punitive damages." *Cook County*, 538 U.S. at 132. While, the insurers remain free to develop public policy arguments for the ultimate question of coverage of multiplied damages, those policy arguments do not change the construction of the Return of Funds exclusion rendered herein. More to the point, the Policy specifically excludes "matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed." The Policy thus contains an explicit backstop for public policy concerns. This exclusion, not the Return of Funds exclusion, is the proper venue to argue public policy exceptions to coverage.

The Court accordingly **grants** summary judgment to Kaiser on the narrow contract interpretation issue that the Return of Funds exclusion does not, as a matter of law, exclude coverage of a Settlement for multiplied damages arising from a return of funds to the Government. Further litigation will determine whether Kaiser has shown that any portion of its Settlement was

for such multiplied damages and whether, even if portions of the Settlement agreement are attributable to multiplied damages, those portions are covered or subject to other exclusions. In particular, the coverage question may implicate other potential exceptions to the definition of **Loss**, such as public policy exclusions for "uninsurable" damages, and insurer defenses, such as the insurers' position that Kaiser's claim was not first made under the policy period. These questions are not before the Court on this motion.

## IV. CONCLUSION

Kaiser's motion for summary judgment is **GRANTED** as follows:

- Kaiser is an insured **Organization** under the AIG Policy
- The Settlement arises from a **Claim**
- The FCA Litigation alleged **Wrongful Acts** of Kaiser
- The Settlement satisfies the prima facie definition of **Loss** as a "settlement." The Court does not rule on whether other exclusions in the definition of **Loss** not addressed herein apply.
- The Return of Funds exclusion does not preclude coverage for any portions of Kaiser's Settlement attributable to multiplied damages.

The Insurers' 56(d) motions are **DENIED**.

**IT IS SO ORDERED**.

Dated: 8/14/2026

EDWARD M. CHEN
United States District Judge